UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANGELA KAY McCULLEY,
An Individual

Plaintiff,

Case No.:
Judge:

vs.

DESTINATION PET, LLC,
A Foreign Limited Liability Company
BETHANY WALLACE,
In her individual and official capacity,
KELLIE WIRPIO,
In her individual and official capacity,
AARON SHAFRAN,
In his individual and official capacity,
SCOTT BRAMBLE,
In his individual and official capacity,

Defendants

AHMAD &AKBAR LAW, PLLC
Muneeb M. Ahmad, Esq. (P70391)
Syed Hussain Akbar, Esq. (P67967)
Attorneys for Plaintiffs
811 N. Main Street, Suite 106
Royal Oak, MI 48067-1825
Tel. (248) 519-2313
Fax: (248) 519-2399
Em: Muneeb@ahmadandakbar.com

**PLAINTIFF'S VERIFIED COMPLAINT**

---

There is no other civil action arising out of the same transaction or occurrence as alleged in the Complaint pending before the Court, nor has any such action been previously filed and dismissed or transferred after having been assigned to a judge, nor do I know of any other civil action between these parties, arising out of the same transaction or occurrence as alleged in this Complaint that is either pending or was previously filed and dismissed, transferred, or otherwise disposed of after having been assigned to a judge in this Court.

**NOW COMES** Plaintiff, **ANGELA KAY McCULLEY**, an individual, by and through Plaintiff's undersigned counsel, **AHMAD & AKBAR LAW, PLLC, d/b/a JUST RIGHT LAW** and for her Verified Complaint against Defendant **DESTINATION PET, LLC**, a Foreign Limited Liability Company and Defendants **BETHANY WALLACE, KELLIE WIRPIO, AARON SHAFRAN,** and **SCOTT BRAMBLE**, Individuals, jointly and severally, hereby states as follows:

## PARTIES

1. At all times relevant herein, Plaintiff Angela Kay McCulley (hereinafter "Plaintiff" or "McCulley") was, and currently is, an individual residing in Macomb County, State of Michigan.

2. At all times relevant herein, Defendant Destination Pet, LLC (hereinafter "Destination Pet" or "Company") is a Limited Liability Company organized under the laws of the State of Texas, with its principal place of business at 1431 Greenway

Drive, Suite 235, Irving, Texas 75038, and is also registered as a Foreign Limited Liability Company doing business in the State of Michigan.

3. At all times relevant herein, Defendant Bethany Wallace (hereinafter "Wallace") was, and upon information and belief currently is, employed by Defendant Destination Pet as Director of Marketing. Wallace is sued in her individual and official capacity.

4. At all times relevant herein, Defendant Kellie Wirpio (hereinafter "Wirpio") was, and upon information and belief currently is, employed by Defendant Destination Pet as a subordinate employee under Plaintiff's direct supervision. Wirpio is sued in her individual and official capacity.

5. At all times relevant Wirpio acted as a manager and oversaw at least one employee in the same department as Plaintiff.

6. At all times relevant herein, Defendant Aaron Shafran (hereinafter "Shafran") was, and upon information and belief currently is, employed by Defendant Destination Pet as its Chief Digital and Marketing Officer. Shafran is sued in his individual and official capacity.

7. At all times relevant herein, Defendant Scott Bramble (hereinafter "Bramble") was, and upon information and belief currently is, employed by Defendant Destination Pet as its President and/or Chief Executive Officer. Bramble is sued in his individual and official capacity.

## JURISDICTION AND VENUE

8. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

9. This action sets forth claims against Defendants based on their:

   a. Violations of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12203 ("ADA"), by retaliating against Plaintiff for engaging in protected activity, culminating in her wrongful termination;

   b. Violations of the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. ("ADEA"), by subjecting Plaintiff to age-based harassment and discriminatory treatment, and by terminating Plaintiff because of her age;

   c. Violations of the ADEA, 29 U.S.C. § 623(d), by retaliating against Plaintiff for opposing age-based discrimination;

   d. Violations of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. ("ELCRA"), by subjecting Plaintiff to a hostile work environment based on age

   e. Violation of the ELCRA by retaliating against Plaintiff for engaging in protected activity; and

10. Subject matter jurisdiction is proper pursuant to:

   a. 28 U.S.C. § 1331, which provides this Court with jurisdiction over cases arising under federal law;

   b. 28 U.S.C. § 1332, which provides this Court with jurisdiction based on diversity of citizenship, as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs;

c. 28 U.S.C. § 1343, which provides this Court with jurisdiction over civil rights actions brought pursuant to the ADA and the ADEA; and

d. 28 U.S.C. § 1367, which provides this Court with supplemental jurisdiction to hear all state law claims arising from the same nucleus of operative facts.

11. Personal jurisdiction is proper as Defendants conduct or conducted business in the State of Michigan, and a substantial part of the unlawful acts and omissions alleged herein were committed within the jurisdiction of the United States District Court for the Eastern District of Michigan.

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in this judicial district, Defendant Destination Pet does business in this judicial district, and a substantial part of the events or omissions giving rise to these claims occurred herein.

13. Plaintiff has fully exhausted all administrative prerequisites to filing this action. On January 13, 2026, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"), Charge No. 450-2026-04289. Plaintiff hereby incorporates the EEOC Charge and its supplement by reference. Plaintiff received a Notice of Right to Sue from the EEOC so as to proceed in this matter.

## FACTUAL ALLEGATIONS

### BACKGROUND AND EMPLOYMENT

14. At all times relevant herein, Plaintiff Angela Kay McCulley was a 46-year-old female, born on July 10, 1979, and was and is an individual residing in Macomb County, State of Michigan.

15. At all times relevant herein, Defendant Destination Pet operated a nationwide pet-care business and, by its own account, employed in excess of 1,000 employees throughout the United States.

16. Plaintiff's work for Defendant Destination Pet was performed for and in support of its Yourgi brand and the Yourgi mobile application and rewards program.

17. On or about February 27, 2025, Plaintiff interviewed with Defendant Bethany Wallace.

18. On or about March 3, 2025, Plaintiff interviewed with Defendant Aaron Shafran.

19. Defendant Scott Bramble played no role in interviewing, selecting, or hiring Plaintiff.

20. The position for which Plaintiff applied was publicly advertised by Defendant Destination Pet on LinkedIn as a remote position located in the "*United States (Remote)*."

21. The advertised position identified no travel requirement of any kind.

22. On March 3, 2025, Defendant Destination Pet extended to Plaintiff a written offer of employment as Social Media Marketing Manager at an annual salary of $75,000.00, with a start date of March 17, 2025.

23. The offer letter identified Defendant Wallace, Director of Yourgi Marketing, as Plaintiff's supervisor.

24. Consistent with the job posting, the offer letter imposed no travel requirement upon Plaintiff.

25. Plaintiff's employment with Defendant Destination Pet commenced on March 17, 2025, and continued without interruption until her termination on November 21, 2025.

26. As the Social Media Marketing Manager:

a. Plaintiff was responsible for building and executing a multi-channel social media strategy from the ground up to promote the Yourgi app and its rewards program;

b. Plaintiff's core duties included developing content calendars, running targeted campaigns, and creating brand-aligned content in collaboration with creative teams to drive user acquisition, engagement, and retention; and

c. Plaintiff's role also involved managing scheduling and performance analytics through the Sprinklr platform, tracking metrics such as reach and return on investment, and partnering cross-functionally with marketing, operations, and product teams to align social efforts with broader business goals.

27. Plaintiff was further responsible for leading real-time community management efforts, coaching and serving as a strategic partner to local center

managers, leading social media training sessions, managing vendor and platform relationships, and fostering a positive and engaging online presence for Destination Pet.

28. Plaintiff reported directly to Defendant Bethany Wallace, Director of Marketing, and ultimately to Defendant Aaron Shafran, Chief Digital and Marketing Officer.

29. Effective June 2, 2025 — approximately eleven (11) weeks after Plaintiff's date of hire — Defendant Destination Pet promoted Plaintiff and increased her annual salary from $75,000.00 to $115,000.00, an increase of $40,000.00, or approximately fifty-three percent (53%).

30. The promotion was confirmed in writing by letter dated June 5, 2025.

31. Following the promotion, Plaintiff's title was Senior Manager, Social Media, as reflected in her Company email signature block throughout the remainder of her employment.

## PLAINTIFF'S DISABILITIES AND APPROVED ADA ACCOMMODATION

32. At all times relevant herein, Plaintiff had been diagnosed with the following qualifying disabilities:

a. Syringomyelia, a condition causing a fluid-filled cyst in the spinal cord that limits Plaintiff's ability to walk, stand for extended periods, and perform physical activities;

b. Crohn's Disease, a chronic inflammatory bowel disease causing unpredictable and severe flare-ups, abdominal pain, diarrhea, and fatigue;

c. Osteoarthrosis (Osteoarthritis), a degenerative joint disease causing pain, stiffness, and reduced range of motion;

d. Ehlers-Danlos Syndrome, a connective tissue disorder making joints prone to dislocation; and

e. Hypersomnia, a condition causing excessive and debilitating fatigue.

33.Each of the foregoing conditions substantially limits one or more major life activities within the meaning of the ADA, including but not limited to walking, standing, bending, lifting, the operation of Plaintiff's digestive and musculoskeletal systems, and sleeping.

34.On April 25, 2025, Plaintiff submitted a written request for reasonable accommodation asking which would allow Plaintiff not to engage in travel as part of her job.

35.Plaintiff described her Ehlers-Danlos Syndrome to Defendant Wallace as a genetic tissue disorder resulting in substantial pain and inflamation that makes travel impossible.

36.Defendant Wallace acknowledged receipt of the Plaintiff’s request and essentially stated that Plaintiff’s inability to travel was ok, which approval Plaintiff confirmed with Human Resources.

37.Defendant Destination Pet approved Plaintiff's accommodation request and formally removed all travel requirements from her position.

38.By reason of the foregoing, as of April 25, 2025, Defendant Destination Pet had actual, documented knowledge of Plaintiff's disabilities, had created a formal record of that knowledge, and was on notice of its obligation under the ADA to maintain the confidentiality of Plaintiff's disability-related medical information and accommodation records.

39.As a direct result of her approved ADA accommodation, Plaintiff did not attend two work trips during her employment:

a. The "*Denver Dog Days*" event in Denver, Colorado, on or about October 10, 2025, and

b. The "Yourgi Texas Launch Parties" in Dallas, Texas, on or about October 24, 2025.

40.Plaintiff's absence from both events was solely due to her approved ADA accommodation.

## PLAINTIFF'S DOCUMENTED RECORD OF COMPETENT AND COMMENDED PERFORMANCE

41.At all times during her employment, Plaintiff performed her job duties in a competent and professional manner and met or exceeded Defendant Destination Pet's legitimate performance expectations.

42.At no time during her employment — from March 17, 2025, through November 21, 2025, — did Plaintiff receive any performance review, written

warning, write-up, disciplinary action, performance improvement plan, or documented counseling of any kind.

43. At no time was Plaintiff advised that her employment was at risk.

44. At no time prior to the moment of her termination was Plaintiff ever advised, orally or in writing, that any person at Defendant Destination Pet had any concern regarding her management style.

45. To the contrary, Plaintiff was repeatedly commended.

46. In October 2025, Defendant Wallace praised Plaintiff and the executive team for their presentation to Defendant Destination Pet's investor group.

47. On or about November 10, 2025 — eleven (11) days before her termination — Plaintiff had her first one-on-one meeting with Defendant Bramble, Defendant Destination Pet's President and/or Chief Executive Officer.

48. During that meeting, Defendant Bramble praised Plaintiff's performance, telling her that she was doing "*too good of a job*" and that she needed to "*slow down*" so that the rest of the Company could catch up to the social media function.

49. On November 14, 2025 — seven (7) days before her termination — Chief Human Resources Officer Erwin praised Plaintiff's written work product.

50. On November 18, 2025 — three (3) days before her termination — Plaintiff participated in an executive leadership meeting at which she contributed to shaping the direction of the Company beyond the social media function.

51.Defendant Destination Pet maintained no document of any kind, at any time, reflecting any deficiency in Plaintiff's performance or management style.

### AGE-BASED HARASSMENT AND HOSTILE WORK ENVIRONMENT

52.Beginning in or about July 2025, Plaintiff was subjected to repeated and ongoing age-based harassment by Defendant Wirpio, Plaintiff's direct subordinate, and by Defendant Wallace, Plaintiff's direct supervisor.

53.The harassment occurred principally during Defendant Destination Pet's weekly "*#TeamSocial*" departmental meetings, which were conducted by video conference and attended by multiple members of Plaintiff's department.

54.On no fewer than three (3) separate occasions, Defendants Wirpio and Wallace made discriminatory and humiliating comments directed at Plaintiff's age and physical appearance, including but not limited to telling Plaintiff that she needed to use filters "*for her wrinkles*," and stating that "*when you get older, you have to use filters.*"

55.These comments were followed by laughter from Defendants Wirpio and Wallace and from other attendees.

56.These comments were made in a public professional setting, in the presence of multiple coworkers, and others magnifying their humiliating impact and undermining Plaintiff's authority as a manager.

57.Upon information and belief, Defendant Wallace was at the relevant time forty-two (42) years of age.

58.Defendant Wirpio was at all relevant times Plaintiff's direct subordinate and reported to Plaintiff.

59.The timing of this discriminatory harassment is significant as it began in or about July 2025, concurrently with Plaintiff first documenting performance deficiencies in Defendant Wirpio's work.

60.The concurrence of Plaintiff's first exercise of supervisory authority over Defendant Wirpio and the onset of the age-based harassment supports the inference that the harassment was, in part, a form of retaliation by Defendant Wirpio against Plaintiff for the exercise of that authority.

61.On or about August 6, 2025, Plaintiff raised these concerns directly with Defendant Wallace during a one-on-one meeting.

62.Plaintiff complained about the age-based comments and expressly requested that both Defendant Wallace and Defendant Wirpio cease the conduct.

63.Defendant Wallace verbally agreed that the comments would stop.

64.Plaintiff's complaint to Defendant Wallace constituted protected activity under the ADEA and the ELCRA.

65.Despite Defendant Wallace's assurance, the age-based discriminatory comments continued after Plaintiff's complaint.

66.Defendants Wallace and Wirpio continued to make discriminatory remarks about Plaintiff's age, with such comments continuing in particular from Defendant Wirpio.

67.Defendant Destination Pet took no effective remedial action in response to Plaintiff's August 2025 complaint.

68.It conducted no investigation, created no record of the complaint, issued no discipline, provided no counseling or training, and took no step whatsoever to prevent recurrence.

69.The continued conduct following Plaintiff's complaint demonstrates Defendant Destination Pet's knowledge of, and deliberate indifference to, the hostile work environment being created and maintained against Plaintiff.

## DEFENDANTS' DIRECTIVE TO ESCALATE PERSONNEL MATTERS AND PLAINTIFF'S SUPERVISION OF DEFENDANT WIRPIO

70.Defendant Wirpio was hired by Defendant Destination Pet in or about April 2025 upon Plaintiff's recommendation.

71.At all times relevant herein, Defendant Wirpio held the title of Influencer and Partnerships Manager, reported directly to Plaintiff, and was a manager-level employee who oversaw at least one other employee in Plaintiff's department.

72.In or about early October 2025, following the separation of another member of Plaintiff's team, Defendant Destination Pet's President — identified in Company communications by the initials "*JSF*" — instructed Plaintiff and other managers to

escalate personnel issues more quickly and to "*phone a friend,*" that is, to bring such matters promptly to Human Resources.

73. Each of Plaintiff's subsequent reports and complaints described below was made in direct compliance with that instruction, and Plaintiff expressly invoked that instruction when reporting Defendant Wirpio's conduct.

## UNAUTHORIZED DISCLOSURE OF PLAINTIFF'S CONFIDENTIAL ADA MEDICAL INFORMATION

74. The ADA imposes strict and mandatory confidentiality requirements upon all disability-related medical information and accommodation records obtained in connection with an employee's accommodation request. Defendant Destination Pet was at all times on notice of these obligations.

75. Defendant Destination Pet's own Employee Handbook, which was provided to Plaintiff and to Defendant Wirpio and which both were required to acknowledge and comply with as a condition of employment, expressly prohibits the "*[u]nauthorized disclosure of the Company's confidential information,*" and separately commits the Company to compliance with the ADA and to the handling of employee disability and accommodation information through its Human Resources Department.

76. At some point following the approval of her accommodation, Defendant Wirpio asked Plaintiff why she was unable to travel for work.

77.Plaintiff answered her, in confidence, and expected that the information would remain private and would not be shared with others.

78.Notwithstanding Plaintiff's approved accommodation, Defendant Destination Pet's confidentiality obligations, and the Employee Handbook, Defendant Wirpio twice disclosed Plaintiff's confidential ADA accommodation status and underlying medical information to other Destination Pet employees without Plaintiff's authorization.

79.The first disclosure occurred on or about October 10, 2025, during the "*Denver Dog Days*" event in Denver, Colorado, which Plaintiff did not attend because of her approved ADA accommodation.

80.The second disclosure occurred on or about October 24, 2025, during the "*Yourgi Texas Launch Parties*" in Dallas, Texas, which Plaintiff likewise did not attend because of her approved ADA accommodation.

81.None of the employees to whom Defendant Wirpio disclosed Plaintiff's medical information had any legitimate business need to know Plaintiff's medical conditions or the existence or terms of her ADA accommodation.

82.Defendant Wirpio’s disclosures of Plaintiff's protected medical information were willful.

83.Defendant Wirpio's repeated disclosures of Plaintiff's protected medical information were unauthorized, violated the ADA, violated Defendant Destination

Pet's own written policies and procedures, humiliated Plaintiff, undermined her authority as a manager, and created a profoundly uncomfortable and hostile work environment.

84.Furthermore, these disclosures were retaliatory in nature, occurring in response to Plaintiff's exercise of her supervisory authority over Defendant Wirpio and Plaintiff's prior complaint about age discrimination.

## MANAGEMENT'S SUPPRESSION OF PLAINTIFF'S COMPLAINTS AND RETALIATION

85.Plaintiff reported Defendant Wirpio's conduct to Defendant Wallace the same day she learned of the second disclosure.

86.At the time Plaintiff reported Defendant Wirpio’s conduct to Defendant Wallace, Defendant Wirpio and Defendant Wallace were both in Dallas, Texas, attending the Yourgi Texas Launch Parties.

87.Defendant Wallace dismissed Plaintiff’s report and complaint despite Plaintiff’s concerns.

88.Pursuant to Defendant Wallace’s direct instructions, Plaintiff did not raise the matter with Defendant Wirpio nor was any discipline issued to her.

89.Furthermore, Defendant Wallace did not follow up with Plaintiff as promised.

90.Accordingly, on or about October 28, 2025, Plaintiff escalated the matter to Defendant Shafran, the Chief Digital and Marketing Officer.

91.Like Defendant Wallace, Defendant Shafran's response minimized the seriousness of the ADA violations and made clear that he did not intend to hold Defendant Wirpio accountable.

92.On October 30, 2025, Plaintiff met with Defendant Wallace and detailed both the ADA confidentiality violations and Defendant Wirpio's ongoing performance deficiencies.

93.Defendant Wallace acknowledged both sets of issues as serious.

94.Because of Defendant Wallace's close personal relationship with Defendant Wirpio, Plaintiff asked Defendant Wallace not to address the matter with Defendant Wirpio herself, and instead to permit Defendant Shafran and Human Resources to address both the ADA violation and the performance concerns.

95.Subsequently, Defendant Wallace sought to have Plaintiff reconsider her complaint by stating that Defendant Wirpio will freak when she learns of the HR complaint and meeting.

96.Later, on November 3, 2025, Plaintiff met as a group with Defendants Wallace and Shafran regarding Defendant Wirpio's conduct.

97.During that meeting, Defendant Wallace suggested that Plaintiff not write Defendant Wirpio up and characterized the ADA confidentiality breach a mistake.

98.Further, Plaintiff was expressly told that she could not formally discipline her own subordinate for the ADA violations.

99. Upon information and belief, during the meeting between Defendant Shafran Defendant Wirpio, Defendant Shafran never addressed Defendant Wirpo's ADA confidentiality violations and instead only addressed Defendant Wirpio's performance.

100. When Plaintiff expressed her dissatisfaction with that outcome and stated that she intended to report the matter to Human Resources, Defendant Shafran expressly instructed Plaintiff not to "*name names*" in her Human Resources complaint.

101. To Plaintiff, this was a directive designed to shield Defendant Wirpio from accountability and to render Plaintiff's complaint vague and difficult for Human Resources to investigate.

102. This pattern of conduct — instructing Plaintiff not to speak with her subordinate, prohibiting Plaintiff from disciplining her subordinate, characterizing a violation of federal law as a mistake or learning experience, declining to escalate the matter to Human Resources, addressing only performance when meeting with the offending employee, and directing Plaintiff not to identify the offending employee by name in her complaint — constitutes compelling evidence of retaliatory animus against Plaintiff for having engaged in protected activity.

## PLAINTIFF'S FORMAL WRITTEN COMPLAINT TO HUMAN RESOURCES

103. On or about November 4, 2025, Plaintiff submitted a formal written complaint to Defendant Destination Pet's Human Resources Department.

104. In that complaint, Plaintiff expressly named Defendant Wirpio and provided details about the ADA and confidential violations and the response or lack thereof by management pertaining to her complaints.

105. Plaintiff's complaint expressly requested a remedy under the ADA's confidentiality provisions.

106. Plaintiff further requested assistance from HR on these matters and inquired as to next steps.

107. Plaintiff's November 4, 2025 written complaint constituted protected activity under the ADA, the ADEA, the PWDCRA, and the ELCRA.

## HUMAN RESOURCES' INADEQUATE RESPONSE AND THE "INTENT" RATIONALE

108. On November 6, 2025, Ms. Braden met with Plaintiff to discuss the complaint.

109. Plaintiff was advised that HR would review the situation and then determine appropriate next steps.

110. No follow-up occurred.

111. Instead, Plaintiff was advised that another representative would be taking over the investigation, and upon information and belief, Plaintiff's complaint was thus reassigned rather than investigated.

112. Subsequently on or about November 13, 2025, Plaintiff met with another HR representative to discuss her complaint.

113. During that meeting, Plaintiff was required to recount the entire matter again, in detail.

114. Thereafter, Plaintiff was advised by the HR representative that Defendant Wirpio would not be terminated or disciplined.

**HUMAN RESOURCES' REQUIREMENT THAT PLAINTIFF DRAFT HER OWN SUBORDINATE'S DISCIPLINE**

115. Furthermore, after the meeting with the HR representative, Plaintiff was told that Defendant Wirpio was to be placed on a thirty (30) day Performance Improvement Plan ("*PIP*") that Plaintiff was directed to prepare herself.

116. HR specifically directed Plaintiff that Defendant Wirpio's PIP was to be focused on general behavior patterns, specifically professionalism, attitude, and responsiveness to direction and not to include the ADA violation or confidentiality breach on the PIP.

117. Defendant Destination Pet thereby deliberately severed Plaintiff's ADA confidentiality complaint from the only disciplinary instrument it was prepared to issue, and then never addressed the confidentiality breach at all.

118. Further, requiring Plaintiff to draft her own subordinate's Performance Improvement Plan was an unusual and burdensome task ordinarily performed by Human Resources, and its imposition upon Plaintiff — after and because she had filed a protected complaint concerning that same subordinate — constituted an additional act of retaliation.

119. Nonetheless, Plaintiff complied with these demands from HR and management.

### THE PROMISED CONFIDENTIALITY MEETING THAT NEVER OCCURRED

120. HR had promised Plaintiff that a joint meeting between Plaintiff, Defendant Wirpio, and Human Resources would be convened to address the ADA confidentiality disclosures.

121. However, despite Plaintiff's multiple attempts to secure a time for that meeting, the promised joint meeting to address the ADA confidentiality disclosures never occurred.

### PLAINTIFF'S WRONGFUL TERMINATION

122. On November 21, 2025, Plaintiff was requested to join a meeting.

123. Upon joining the meeting, Plaintiff discovered that Defendant Scott Bramble, Defendant Destination Pet's President and/or Chief Executive Officer, had also joined the meeting.

124. Defendant Bramble had not been identified to Plaintiff as a participant, and had no involvement in Plaintiff's interviewing, selection, or hiring.

125. Without warning, explanation, or any prior documented performance counseling, Defendant Bramble informed Plaintiff that her employment was terminated effective immediately.

126. Plaintiff was then advised that the reason for her termination was that her "*management style did not match their culture.*"

127. When Plaintiff questioned the reason for her termination, Defendant Destination Pet's representative became visibly agitated, stated that she would not discuss the matter further, and refused to provide any additional explanation or clarification.

128. Plaintiff was given no opportunity to respond to the stated reason, no written statement of the reason for her termination, and no notice of any right to appeal or to have the decision reviewed.

129. Immediately following the termination call, Plaintiff attempted to reach out to Defendant Wallace, to no avail.

130. Later, on November 21, 2025, HR transmitted a severance package and separation materials to Plaintiff.

131. Exactly seventeen (17) days after Plaintiff filed her formal written Human Resources complaint on November 4, 2025, Plaintiff's employment was terminated.

## DEFENDANTS' STATED REASON FOR TERMINATION IS PRETEXTUAL

132. Defendant Destination Pet's stated reason for Plaintiff's termination — that her management style did not match the Company's culture — is pretextual.

133. Plaintiff was never placed on a performance improvement plan, never received a formal written warning, never received a performance review, was never counseled regarding her management style, and was never warned that her employment was at risk, at any time prior to the moment of her termination.

134. In fact, just three (3) days before her termination, Plaintiff participated in an executive leadership meeting concerning the strategic direction of the Company.

135. After her termination, Plaintiff learned for the first time that Defendant Wirpio had filed a complaint against Plaintiff, two (2) days after Plaintiff's own protected complaint naming Defendant Wirpio.

136. Incidentally, Plaintiff was never shown Defendant Wirpio's complaint, was never interviewed concerning it, was never asked to respond to it, and was never advised that it existed.

137. The temporal proximity between Plaintiff's November 4, 2025 written complaint and her November 21, 2025 termination — a span of only seventeen (17) days — is compelling evidence of retaliatory causation.

138. Moreover, Plaintiff's protected activity was continuous throughout that interval.

139. The elevation of the termination decision to the President and/or Chief Executive Officer level, rather than its handling through ordinary managerial channels, further demonstrates that the termination was not routine and was motivated by Plaintiff's protected activity.

140. Finally, Defendants' disparate treatment of Plaintiff and Defendant Wirpio is itself evidence of pretext and retaliatory animus.

141. Plaintiff, who reported violations of the ADA and confidentiality breaches, as well as age discrimination and retaliation through the very channels the Company's President had directed her to use, was terminated seventeen (17) days later.

## DEFENDANTS' POST-TERMINATION CONDUCT AND PLAINTIFF'S DAMAGES

142. Following her termination on November 21, 2025, Defendant Destination Pet's employees contacted Plaintiff seeking account credentials and multi-factor authentication codes for Company social media accounts that remained tied to Plaintiff's personal devices and accounts.

143. Defendant Destination Pet failed to remove Plaintiff's name and personal contact information from Company social media and advertising accounts after her termination.

144. As a consequence, Plaintiff continued to receive approximately thirty (30) automated two-factor authentication text messages directed to Company accounts.

145. Defendant Destination Pet also failed to pay the final balance on an advertising account maintained in connection with Plaintiff's personal credentials, in the amount of $703.06.

146. Because the platform in question links business advertising accounts to the personal account of the individual administrator, Defendant Destination Pet's non-payment has impaired Plaintiff's ability to place advertising on that platform on behalf of any subsequent employer, causing ongoing professional harm.

147. Following Plaintiff's termination, Defendant Wirpio — whose ADA violations Defendants declined to address — assumed Plaintiff's responsibilities and publicly represented that she had taken Plaintiff's position and was managing Plaintiff's former team.

148. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has sustained and continues to sustain substantial damages, including past and future lost wages and benefits, loss of earning capacity, out-of-pocket medical

and treatment expenses, emotional distress, mental anguish, humiliation, loss of enjoyment of life, damage to her professional reputation, and other economic and non-economic damages.

149. Plaintiff timely filed a Charge of Discrimination against Defendant Destination Pet with the Equal Employment Opportunity Commission, alleging discrimination and retaliation on the basis of disability and age. Michigan is a deferral jurisdiction, and Plaintiff's Charge was accordingly timely if filed within three hundred (300) days after the alleged unlawful employment practice occurred. 42 U.S.C. § 2000e-5(e)(1), as incorporated into the ADA by 42 U.S.C. § 12117(a); 29 U.S.C. § 626(d)(1)(B); 29 C.F.R. § 1601.13(b)(1).

150. The Equal Employment Opportunity Commission issued Plaintiff a Notice of Right to Sue, and this action is commenced within ninety (90) days after Plaintiff's receipt of that Notice. 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. § 12117(a); 29 U.S.C. § 626(e).

151. All conditions precedent to the institution of this action under the Americans with Disabilities Act and the Age Discrimination in Employment Act have been satisfied. Fed. R. Civ. P. 9(c).

152. No exhaustion of administrative remedies is required as a condition to Plaintiff's claims under the Persons with Disabilities Civil Rights Act or the Elliott-Larsen Civil Rights Act, each of which authorizes an aggrieved person to bring a

direct civil action for injunctive relief or damages, or both. MCL 37.1606(1); MCL 37.2801(1).

153. Plaintiff's claims arising under Michigan statutory and common law derive from the same common nucleus of operative fact as her federal claims, and this Court has supplemental jurisdiction over them. 28 U.S.C. § 1367(a).

**DAMAGES**

154. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

155. As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered and continues to suffer substantial damages, including but not limited to:

a. Past and future lost wages and salary;

b. Loss of employment benefits, including health insurance, retirement contributions, and paid time off;

c. Emotional distress and mental anguish;

d. Humiliation and damage to professional reputation;

e. Medical expenses incurred as a result of Defendants' unlawful conduct;

f. Loss of career opportunities and diminished earning capacity;

g. Loss of the ordinary pleasures of life, loss of self-esteem and confidence, anxiety, shock, and embarrassment;

h. Punitive damages under the Americans with Disabilities Act for Defendants' conduct undertaken with malice or with reckless

indifference to Plaintiff's federally protected rights, 42 U.S.C. § 1981a(b)(1);

i. Exemplary damages under the Persons with Disabilities Civil Rights Act and the Elliott-Larsen Civil Rights Act for Defendants' wilful, wanton, and reckless disregard of Plaintiff's rights;

j. Liquidated damages under the Age Discrimination in Employment Act for wilful violations, 29 U.S.C. § 626(b);

k. Statutory damages, costs, and attorney's fees under the Bullard-Plawecki Employee Right to Know Act, MCL 423.511;

l. Unreimbursed business expenditures, together with accrued finance charges and interest;

m. Statutory attorney's fees, witness fees, litigation expenses, and costs; and

n. All other economic and non-economic damages as proven at trial.

## **FEDERAL CLAIMS**

### **COUNT I**
### **VIOLATIONS OF THE ADA, 42 U.S.C. § 12101 ET SEQ.**
### **RETALIATORY ADVERSE EMPLOYMENT ACTIONS**
### **(Against Defendant Destination Pet, LLC)**

156. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

157. The ADA prohibits covered employers from discriminating against qualified individuals on the basis of disability with respect to the terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

158. At all times relevant herein, Defendant Destination Pet was an "employer" within the meaning of the ADA. 42 U.S.C. § 12111(5).

159. At all times relevant herein, Plaintiff was a "qualified individual with a disability" within the meaning of the ADA. Each of her diagnosed conditions — Syringomyelia, Crohn's Disease, Osteoarthritis, Ehlers-Danlos Syndrome, and Hypersomnia — substantially limits one or more major life activities, including but not limited to walking, standing, performing manual tasks, digestive function, and sleeping. 42 U.S.C. § 12102.

160. The question of whether Plaintiff's impairments substantially limit a major life activity is to be construed broadly in favor of expansive coverage, is not meant to be a demanding standard, and is made without regard to the ameliorative effects of mitigating measures. 42 U.S.C. § 12102(4)(A), (4)(E)(i); 29 C.F.R. § 1630.2(j)(1)(i)–(iii).

161. At all times relevant herein, Plaintiff was a “qualified individual” within the meaning of the Act, in that she could perform the essential functions of her position with or without reasonable accommodation. 42 U.S.C. § 12111(8).

162. Defendant Destination Pet had actual, documented knowledge of Plaintiff's disabilities, having approved her reasonable accommodation request without seeking further information.

163. Defendant Destination Pet further discriminated against Plaintiff on the basis of her disability by, among other things: creating and tolerating a hostile work environment based on Plaintiff's disability status; using Plaintiff's ADA-protected absences from work trips as a pretext for adverse employment decisions; failing to discipline employees who violated Plaintiff's ADA confidentiality rights; and ultimately terminating Plaintiff's employment.

164. Furthermore, and more specifically, the materially adverse employment action challenged in this count is Destination Pet's November 21, 2025 discharge of Plaintiff.

165. Plaintiff's protected opposition was a but-for cause of that discharge: absent her opposition and continued pursuit of the medical-confidentiality complaint, Destination Pet would not have terminated her employment when it did.

166. The Act requires that the adverse action be taken "because of" disability; it does not require that disability be the sole cause. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 314 (6th Cir. 2012) (en banc).

167. This claim does not depend on an entitlement to have Defendant Wirpio terminated, to impose a particular disciplinary measure, or to control Human Resources' disciplinary decisions.

168. Even if Destination Pet could lawfully decline Plaintiff's preferred disciplinary response, it could not discharge her because she engaged in protected opposition.

169. Plaintiff relies on the handling of her complaint as context bearing on management's knowledge and motive, rather than asserting that every delay, disagreement, or refusal to discipline independently constituted an adverse employment action.

170. In short, Destination Pet fired McCulley because she pursued a complaint she genuinely and reasonably understood to concern ADA-protected medical privacy.

171. In addition, and alternatively, Plaintiff alleges that Destination Pet also discharged her because of her protected opposition to the handling and disclosure of accommodation-related medical information.

172. Plaintiff asserts direct retaliatory decision making and, alternatively, retaliation accomplished through biased input that influenced the termination decision.

173. Plaintiff's alternative theory concerns the information and recommendations that caused Destination Pet to discharge her, including its reliance on subordinate complaints.

174. The fact that Defendant Bramble delivered the termination decision does not, by itself, identify all persons whose information or recommendations influenced that decision.

175. Plaintiff alleges that her protected opposition was a but-for cause of discharge. The circumstances supporting that allegation include the decisionmakers' knowledge of her continuing complaint, the timing of termination, the favorable performance feedback, and Destination Pet's reliance on Defendant Wirpio's intervening complaint without obtaining Plaintiff's response.

176. Plaintiff does not contend that every subordinate complaint is retaliatory, that a complaint must be fabricated to constitute biased input, or that Destination Pet was required to disregard a legitimate complaint.

177. Plaintiff's claim is that Destination Pet could not use a complaint or recommendation as a means of discharging her because she engaged in protected opposition.

178. The adverse action for which Plaintiff seeks relief is her discharge.

179. This theory does not depend on an entitlement to terminate Defendant Wirpio, impose a particular disciplinary measure, or control Human Resources' response to Plaintiff's complaint.

180. Defendant Destination Pet's stated reason for Plaintiff's discharge — that her management style was not a match for the Company's culture — is a pretext

for disability discrimination. No performance warning, performance improvement plan, written counseling, or documented concern regarding Plaintiff's management style was ever issued to or communicated to Plaintiff at any time before the moment of her discharge.

181. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages including past and future lost wages and benefits, emotional distress, mental anguish, damage to professional reputation, and other economic and non-economic damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Destination Pet, LLC, and award compensatory damages, punitive damages, back pay, front pay, reinstatement or its economic equivalent, attorney's fees and costs, and all other relief the Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE ADEA, 29 U.S.C. § 621 ET SEQ.
## HOSTILE WORK ENVIRONMENT BASED ON AGE
## (Against Defendant Destination Pet, LLC)

182. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

183. Destination Pet was Plaintiff’s employer and was covered by the ADEA during the relevant period.

184. The ADEA prohibits discrimination against individuals 40 years of age or older with respect to the terms, conditions, and privileges of employment. 29 U.S.C. § 623(a).

185. At all times relevant herein, Plaintiff was forty-six years old when discharged and was within the ADEA's protected age group.

186. Beginning in July 2025, and continuing through the time of her termination, Plaintiff was subjected to repeated, unwelcome, and humiliating age-based harassment by Defendants Wallace and Wirpio, including but not limited to public comments on video conference calls disparaging Plaintiff's age and physical appearance.

187. Plaintiff reported this harassment to Defendant Wallace in August 2025. Despite Wallace's assurance that the conduct would cease, the age-based comments continued without any meaningful corrective action, demonstrating Defendant Destination Pet's deliberate indifference.

188. The age-based harassment was sufficiently severe and pervasive to unreasonably interfere with Plaintiff's work performance, create an intimidating and hostile work environment, and materially alter the terms and conditions of her employment.

189. Defendant Destination Pet is liable for the hostile work environment created by its supervisory employees, including Wallace, who participated directly in the harassing conduct.

190. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer substantial damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Destination Pet, LLC, and award compensatory damages, liquidated damages under the ADEA, back pay, front pay, attorney's fees and costs, and all other relief the Court deems just and proper.

## COUNT III
## VIOLATIONS OF ADEA, 29 U.S.C. § 623(d)
## RETALIATION
## (Against Defendant Destination Pet, LLC)

191. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

192. The ADEA prohibits retaliation against any employee who has opposed any practice made unlawful by the ADEA or who has participated in any ADEA proceeding or investigation. 29 U.S.C. § 623(d).

193. Plaintiff engaged in ADEA-protected activity on multiple occasions, including but not limited to:

a. Verbally complaining to Defendant Wallace in August 2025 about the age-based comments and requesting that the conduct cease; and

b. Filing a formal HR complaint on November 4, 2025, which encompassed the hostile work environment she had been subjected to.

194. Plaintiff's opposition was based on her genuine and objectively reasonable belief that repeated workplace ridicule expressly tied to her age was unlawful discrimination. The complaint identified age-based conduct, rather than merely protesting an unfair personnel decision.

195. Following Plaintiff's protected activity, Defendants engaged in a pattern of adverse employment actions, including escalating retaliation and, ultimately, Plaintiff's termination — 17 days after her formal HR complaint.

196. The causal connection between Plaintiff's protected ADEA activity and her termination is demonstrated by the close temporal proximity of these events and the absence of any prior documented performance concerns communicated to Plaintiff.

197. Destination Pet discharged Plaintiff because she opposed age discrimination. Her protected opposition was a but-for cause of her termination: absent that opposition, Destination Pet would not have discharged her when it did. The discharge constituted a materially adverse action.

198. The retaliation was willful because Destination Pet knew, or recklessly disregarded whether, terminating Plaintiff for opposing age discrimination violated the ADEA. Plaintiff's express complaint and request that the conduct cease gave her direct supervisor notice of her opposition before discharge.

199. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer substantial damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Destination Pet, LLC, and award compensatory damages, liquidated damages, back pay, front pay, attorney's fees and costs, and all other relief the Court deems just and proper.

## STATE LAW CLAIMS

## COUNT IV
## VIOLATIONS OF ELCRA
## HOSTILE WORK ENVIRONMENT BASED ON AGE
## (Against All Defendants)

200. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

201. The Michigan Elliott-Larsen Civil Rights Act ("ELCRA"), MCL 37.2202, provides that an employer shall not:

a. Fail or refuse to hire, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment because of age; or

b. Limit, segregate, or classify an employee in a way that deprives or tends to deprive the employee of an employment opportunity or otherwise adversely affects the status of an employee because of age.

202. At all times relevant herein, Defendant Destination Pet was Plaintiff's "employer" within the meaning of the ELCRA. MCL 37.2201.

203. Plaintiff, at age 46, was a member of a protected class under the ELCRA, which prohibits age discrimination without the 40-year-old floor applicable under the ADEA.

204. As fully described above, Defendants subjected Plaintiff to repeated, unwelcome, and humiliating age-based comments and conduct in a public professional setting, beginning in July 2025, that were sufficiently severe and pervasive to create an objectively hostile and abusive work environment.

205. Defendant Destination Pet is directly and vicariously liable for the harassing conduct of Defendants Wallace, a supervisory employee, and Wirpio, a subordinate whose conduct was known to and ratified by management.

206. Defendants Wallace, Wirpio, Shafran, and Bramble are individually liable under the ELCRA as agents of Defendant Destination Pet who participated in, condoned, or failed to remedy the hostile work environment. MCL 37.2202.

207. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer substantial damages including lost wages, emotional distress, mental anguish, damage to professional reputation, medical expenses, and other economic and non-economic damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against all Defendants, and award compensatory damages,

exemplary damages, attorney's fees and costs pursuant to MCL 37.2801, and all other relief the Court deems just and proper.

**COUNT V**
**VIOLATIONS OF ELCRA**
**RETALIATION**
**(Against All Defendants)**

208. Plaintiff incorporates by reference all preceding paragraphs as though fully set forth herein.

209. The ELCRA prohibits discrimination or retaliation against a person "because the person has opposed a violation of this act, or because the person has made a charge, filed a complaint, testified, assisted, or participated in an investigation, proceeding or hearing under this act." MCL 37.2701(a).

210. Plaintiff engaged in ELCRA-protected activity on multiple occasions, including:

a. Verbally complaining to Defendant Wallace in August 2025 regarding age-based discriminatory comments;

b. Requesting that the age-based conduct cease; and

c. Filing a formal written HR complaint on November 4, 2025.

211. Plaintiff’s opposition was based on her genuine and objectively reasonable belief that repeated workplace ridicule expressly tied to her age was unlawful discrimination. The complaint identified age-based conduct, rather than merely protesting an unfair personnel decision.

212. Following Plaintiff's protected activity, Defendants engaged in a pattern of adverse employment actions, including escalating retaliation and, ultimately, Plaintiff's termination — 17 days after her formal HR complaint.

213. The causal connection between Plaintiff's ELCRA-protected activity and the adverse employment actions taken against her is evidenced by the close temporal proximity, the lack of any prior performance counseling, the pretextual nature of the stated reason for termination, and the pattern of conduct specifically designed to discourage Plaintiff from pursuing her legal rights.

214. Destination Pet discharged Plaintiff because she opposed age discrimination. Her protected opposition was a but-for cause of her termination: absent that opposition, Destination Pet would not have discharged her when it did. The discharge constituted a materially adverse action.

215. The retaliation was willful because Destination Pet knew, or recklessly disregarded whether, terminating Plaintiff for opposing age discrimination violated the ELCRA. Plaintiff's express complaint and request that the conduct cease gave her direct supervisor notice of her opposition before discharge.

216. Each individual Defendant is individually liable under the Act as an agent of Defendant Destination Pet who participated in the discriminatory conduct. *Elezovic v. Ford Motor Co.*, 472 Mich. 408, 425–27, 697 N.W.2d 851 (2005); MCL 37.2201(a).

217. As a direct and proximate result of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer substantial damages.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant Destination Pet, LLC, and award compensatory damages, liquidated damages, back pay, front pay, attorney's fees and costs, and all other relief the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Angela Kay McCulley respectfully requests that this Honorable Court:

A. Enter judgment in favor of Plaintiff and against Defendants on all Counts set forth herein;

B. Award Plaintiff compensatory damages for all past and future economic and non-economic losses, including but not limited to lost wages, loss of benefits, emotional distress, and damage to professional reputation;

C. Award Plaintiff back pay and front pay;

D. Award Plaintiff liquidated damages under the ADEA for willful violations;

E. Award Plaintiff exemplary and/or punitive damages against Defendants for willful, malicious, and reckless violations of Plaintiff's rights;

F. Award Plaintiff reasonable attorney's fees and litigation costs pursuant to the ADA, the ADEA, and the ELCRA, and any other applicable statute;

G. Award Plaintiff statutory interest as provided by applicable law; and

H. Grant Plaintiff such other and further relief as the Court deems equitable, just, and proper under the circumstances.

Respectfully Submitted,

/s/ Muneeb M. Ahmad

AHMAD & AKBAR LAW, PLLC
Muneeb M. Ahmad (P70391)
Attorneys for Plaintiff
26877 Northwestern Hwy
Door No. 5, Suite 410
Southfield, MI 48033
T. 248-519-2313
F. 248-519-2399
Muneeb@ahmadandakbar.com

Dated: November 13, 2026

UNITED STATES DISTRICT COURT
IN THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

ANGELA KAY McCULLEY,
An Individual

Plaintiff,

Case No.:
Judge:

vs.

DESTINATION PET, LLC,
A Foreign Limited Liability Company
BETHANY WALLACE,
In her individual and official capacity,
KELLIE WIRPIO,
In her individual and official capacity,
AARON SHAFRAN,
In his individual and official capacity,
SCOTT BRAMBLE,
In his individual and official capacity,

Defendants

| | |
|---|---|
| AHMAD &AKBAR LAW, PLLC<br>Muneeb M. Ahmad, Esq. (P70391)<br>Syed Hussain Akbar, Esq. (P67967)<br>Attorneys for Plaintiffs<br>811 N. Main Street, Suite 106<br>Royal Oak, MI 48067-1825<br>Tel. (248) 519-2313<br>Fax: (248) 519-2399<br>Em: Muneeb@ahmadandakbar.com | |

**JURY DEMAND**

---

**NOW COMES** Plaintiff, **ANGELA KAY McCULLEY**, an individual, by and through Plaintiff's undersigned counsel, **AHMAD & AKBAR LAW, PLLC, d/b/a JUST RIGHT LAW** and for her Verified Complaint against Defendant **DESTINATION PET, LLC**, a Foreign Limited Liability Company and Defendants **BETHANY WALLACE, KELLIE WIRPIO, AARON SHAFRAN,** and **SCOTT BRAMBLE**, Individuals, jointly and severally, and hereby demands a trial by jury in this instant action.

Respectfully Submitted,

/s/ Muneeb M. Ahmad
AHMAD & AKBAR LAW, PLLC
Muneeb M. Ahmad (P70391)
Attorneys for Plaintiff
26877 Northwestern Hwy
Door No. 5, Suite 410
Southfield, MI 48033
T. 248-519-2313
F. 248-519-2399
Muneeb@ahmadandakbar.com

Dated: November 13, 2026